UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL CAGLE,

                              Plaintiff,

                                                                                     9:09-CV-0648
v.                                                                                   (FJS/GHL)

GRAVLIN, DEMARSE, VAN ORGRUM,
BONDS, LIRA, TROMBLY, OTIS,
BELLEINIER,

                              Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

MICHAEL CAGLE, 99-A-6191
Plaintiff *pro se*
Sullivan Correctional Facility
Box 116
Fallsburg, NY 12733

HON. ANDREW M. CUOMO                           KRISTA A. ROCK, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Michael Cagle alleges that Defendants retaliated against him, denied him access to the courts, and exposed him to feces while he was incarcerated at Upstate Correctional Facility.

Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).[1] (Dkt. No. 27.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

I.     BACKGROUND

In his amended complaint, Plaintiff alleges that on January 22, 2009, Defendant Officers Van Orgrum and Bonds ordered him to come out of his cell and threatened to issue a misbehavior report against him "in retaliation for an incident that happened [when] [P]laintiff refus[ed] to move [his] cell." (Dkt. No. 8 ¶ 7.) Plaintiff refused the direct order. (Dkt. No. 8 ¶ 8.) Plaintiff was issued a misbehavior report. (Dkt. No. 8 ¶ 9.)

Plaintiff was then moved to a "very unsanitized" cell "where he was . . . unprotected from feces." (Dkt. No. 8 ¶ 10.) The complaint does not state who moved Plaintiff to this cell. On January 23, 2009, Plaintiff noticed feces on the wall and gate bars when he went to recreation. (Dkt. No. 8 ¶ 11.) It is not entirely clear from the amended complaint whether the wall and gate bars to which Plaintiff refers were in his cell or in the recreation area.[2] Plaintiff alleges that Defendants Demarse, Trombly, Lira, Otis, and Belleinier "were well aware of the feces . . . [and] refused to do anything about" it. (Dkt. No. 8 ¶ 12.) Plaintiff alleges that Defendant Gravlin

---

[1]     Plaintiff argues that Defendants "have waived their objections by their failure to respond timely to the Plaintiff's amended complaint." (Dkt. No. 29 at 2.) Plaintiff's argument is without merit. Defendants requested, and I granted, an extension of time to January 24, 2010, to respond to the amended complaint. (Dkt. No. 18.) Defendants filed the motion to dismiss on January 21, 2010. (Dkt. No. 27.)

[2]     In the original complaint, the context of this allegation made it clear that the wall and gate bars were outside rather than in Plaintiff's cell. (Dkt. No. 1 ¶ D.) Plaintiff's opposition to the motion to dismiss indicates that Defendants "did not make any effort to sanitize[] the rec pen yard that [i]s located out in the back of cell," which also indicates that the wall and gate were in the recreation area rather than his cell. (Dkt. No. 29 at 1.)

"came to clean the feces and left it just like it was and never came back to finish." (Dkt. No. 8 ¶ 14.)

Plaintiff alleges that he was retaliated against "for . . . filing a lot of complaints to the Department of Corrections in Albany . . . and to Inmate Grievance Committee about the unsanitized cell." (Dkt. No. 8 ¶ 13.) Plaintiff alleges that he was "singled out for further harassment and retaliatory methods" when he complained about the conditions. (Dkt. No. 8 ¶ 15.) Plaintiff alleges that he was denied recreation, denied the right to register complaints, and that legal pleadings regarding his complaints were removed from his cell and never returned. (Dkt. No. 8 ¶¶ 18, 20.)

The complaint names Defendants in their individual and official capacities. (Dkt. No. 8 ¶¶ 4-5.) Plaintiff requests $50,000 each from Defendants Belleinier, Lira, and Otis and $25,000 each from the other Defendants. (Dkt. No. 8 at 5.)

Defendants now move to dismiss the complaint. (Dkt. No. 27.) Plaintiff has opposed the motion. (Dkt. No. 29.) Defendants have filed a reply. (Dkt. No. 30.)

## II.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III. ANALYSIS

Defendants argue that (A) Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment; (B) Plaintiff has failed to state a retaliation claim; (C) Plaintiff has failed to state an access to the courts claim; (D) Plaintiff has failed to state an Eighth Amendment conditions of confinement claim; (E) Plaintiff's allegations of verbal harassment are not actionable; and (F) Plaintiff has failed to allege personal involvement by Defendants Belleinier, Otis, and Lira. (Dkt. No. 27-1.)

### A. Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against them for damages in their official capacities are barred by the Eleventh Amendment. (Dkt. No. 27-1 at 4.) Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-06 (1984).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.[3] All employees of the New York State Department of Correctional Services

---

[3] *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself. . . .

("DOCS") are state officials for the purposes of the Eleventh Amendment. *See, e.g., Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 U.S. Dist. LEXIS 11531, at *7, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."). Here, Defendants are all DOCS employees. (Dkt. No. 1 ¶¶ 4-5.) Any claim for damages against them is accordingly barred by the Eleventh Amendment. Therefore, I recommend that the Court dismiss these claims.

### B. Retaliation

Plaintiff alleges that Defendants Van Orgrum and Bonds retaliated against him by filing a misbehavior report and that he was "singled out for further harassment and retaliatory methods" when he complained about unsanitary conditions. (Dkt. No. 8 ¶¶ 7, 9, 13, 15.) Defendants move to dismiss these claims. (Dkt. No. 27-1 at 7-8.)

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

---

We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

6

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).

As to Plaintiff's retaliation claim against Defendants Van Orgrum and Bonds, Plaintiff has not pleaded facts plausibly suggesting that he was engaged in any protected conduct. Plaintiff alleges merely that these Defendants threatened him with a misbehavior report "in retaliation for an incident that happened [when] [P]laintiff refus[ed] to move [his] cell" and then issued a misbehavior report when he disobeyed a direct order to exit his cell.  (Dkt. No. 8 ¶¶ 7-8.) I can find no case holding that a prisoner has a constitutional right either to the cell of his choice or to disobey a direct order.  Moreover, even if Plaintiff had been engaged in protected conduct,

7

he would not be able to establish that Defendants Van Orgrum and Bonds retaliated against him. Adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).  Here, Plaintiff admits that he refused a direct order.  (Dkt. No. 8 ¶ 8.)  Thus, even if Defendants Van Orgrum and Bonds had retaliatory motives for issuing the misbehavior report, their action would be upheld.  Therefore, I recommend that the retaliation claims against Defendants Van Orgrum and Bond be dismissed.

As to Plaintiff's claims that he was placed in an unsanitary cell and "singled out for further harassment and retaliatory methods" when he complained, nothing in the complaint ties any of the named Defendants to these alleged acts of retaliation.  Plaintiff does not specify who placed him in the unsanitary cell,  who 'singled him out' for harassment, or what form the "retaliatory methods" took.  Therefore, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's retaliation claims.

I recommend that these claims be dismissed with prejudice.  Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint.  *See Advanced Marine Tech. v. Burnham Sec .,Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).  In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."

*Cuoco*, 222 F.3d at 112 (citation omitted).  Here, Plaintiff has already been given leave once to amend his complaint to allege personal involvement by Defendants in the alleged constitutional violations.  (Dkt. No. 7.)

### C. Access to the Courts

Plaintiff alleges that he was denied the right to register complaints and that legal pleadings regarding his complaints were removed from his cell and never returned.  (Dkt. No. 8 ¶¶ 18, 20.)  Defendants argue that these claims should be dismissed because Plaintiff has not alleged that he suffered any harm as a result of these alleged incidents.  (Dkt. No. 27-1 at 9.)  Defendants are correct.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  A claim for reasonable access to the courts requires that an inmate demonstrate that the alleged act of deprivation "actually interfered with his access to the courts or prejudiced an existing action." *Id.* (citations omitted).  To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that he suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351-353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

Here, Plaintiff has not alleged that he suffered an actual injury as a result of the alleged

9

incidents. Indeed, the body of the complaint sets forth no facts at all about these incidents. Rather, they are mentioned only in passing in the portion of the amended complaint listing Plaintiff's causes of action. (Dkt. No. 8 ¶¶ 18, 20.) Plaintiff says merely that he was "denied [the] right to register complaints" and that his "right of access to the courts was violated when his legal pleadings concerning grievances were taken from his cell and never returned." *Id*. Therefore, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's access to the courts claim. Plaintiff has not previously been given an opportunity to amend this cause of action, so I recommend that the Court dismiss the claim without prejudice.

### D. Conditions of Confinement

Plaintiff alleges that he was placed in a "very unsanitized" cell where he was "unprotected from feces" and that he noticed feces on the wall and gate bars when he went to recreation. (Dkt. No. 8 ¶¶ 10-11.) Defendants argue that Plaintiff's claims must be dismissed because "given the entirely conclusory nature of [P]laintiff's . . . claim, [P]laintiff has failed to establish that the conditions of his confinement violated the Eighth Amendment or that the defendants were deliberately indifferent." (Dkt. No. 27-1 at 10.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement"

for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim contains both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Plaintiff alleges that his cell was "unsanitized" and that he was "unprotected from feces." Regarding the allegation that the cell was "unsanitized," a general allegation that a prisoner was subjected to "unclean" conditions, without more particularized allegations of fact, is insufficient to state a conditions of confinement claim. *See Williams v. Carbello*, 666 F. Supp. 2d 373, 379 (S.D.N.Y. 2009). However, I find that Plaintiff's allegations that he was "unprotected from feces" and that there were feces on the wall and gate are sufficient to plausibly suggest that he was subjected to unconstitutional conditions of confinement. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (finding that triable issue of fact existed where prisoner alleged he was, *inter alia*, exposed to human feces in his cell). Although Plaintiff's allegations are not as specific or severe as those described in *Gaston*, they are sufficient to satisfy

the minimal pleading standard he is required to meet.[4]  Therefore, I find that Plaintiff has satisfied the objective prong.[5]

To satisfy the subjective component of a conditions of confinement claim, a prisoner must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Defendants do not address the subjective component except to say that Plaintiff "has failed to establish . . . that the defendants were deliberately indifferent to the conditions of his confinement." (Dkt. No. 27-1 at 10.)  I find that Plaintiff has sufficiently alleged that Defendants Demarse, Lira, Trombly, Otis, and Belleinier were deliberately indifferent because the complaint states that these Defendants "were well aware of the feces . . . [and] refused to do anything about" it. (Dkt. No. 8 ¶ 12.)  I find that Plaintiff has sufficiently alleged that Defendant Gravlin was deliberately indifferent because the complaint states that he "came to clean the feces and left it just like it was and never came back to finish." (Dkt. No. 8 ¶ 14.)  Therefore, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's conditions of confinement claim

---

[4] I note that the section of Defendants' brief on this issue does not directly address Plaintiff's allegation that he was "unprotected from feces."  (Dkt. No. 27-1 at 9-10.)

[5] I express no opinion as to whether Plaintiff's allegations are sufficient to withstand a motion for summary judgment.

regarding the feces in his cell.[6]

Plaintiff may also be asserting that he was subjected to unconstitutional conditions of confinement because he was denied recreation. (Dkt. No. 8 ¶ 18.) The complaint does not include any facts plausibly suggesting that any named Defendant denied Plaintiff recreation. In fact, the complaint specifically states that Plaintiff went to recreation on January 23, 2009. (Dkt. No. 8 ¶ 11.) Therefore, I recommend that this claim be dismissed. Plaintiff has not previously amended this cause of action, so I recommend that the claim be dismissed without prejudice.

### E.     Verbal Harassment

Plaintiff alleges that Defendants singled him out for harassment. (Dkt. No. 8 ¶ 15.) Defendants move to dismiss this claim to the extent that it is premised merely on verbal harassment. Defendants correctly note that "[v]erbal harassment, 'no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable under 42 U.S.C. § 1983.'" (Dkt. No. 27-1 at 11, quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998).) I therefore recommend that the Court dismiss any claim that Defendants violated Plaintiff's constitutional rights by verbally harassing him. This cause of action could not be cured by better pleading, so I recommend that it be dismissed with prejudice.

---

[6] Defendants argue that they are entitled to qualified immunity because "[P]laintiff cannot demonstrate that . . . they subjected him to . . . cruel and unusual punishment. Plaintiff's own admissions establish that he was allowed recreation." (Dkt. No. 27-1 at 13.) Defendants' qualified immunity argument does not address Plaintiff's allegations regarding feces. Therefore, I find that Defendants are not entitled to qualified immunity on the record currently before the Court.

### F. Personal Involvement

Defendants argue that Plaintiff has failed to plead facts plausibly suggesting that Defendants Belleinier, Otis, and Lira were personally involved in any constitutional violation. (Dkt. No. 27-1 at 5-6.) These Defendants are, respectively, the Superintendent, Deputy Superintendent of Administration, and Deputy Superintendent of Programming at Upstate Correctional Facility. (Dkt. No. 27-1 at 6 n. 2-3.) Defendants Belleinier, Otis, and Lira argue that Plaintiff has sued them "based on their supervisory positions." (Dkt. No. 27-1 at 5.)

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent

14

in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Here, the complaint states that these Defendants "were well aware of the feces . . . [and] refused to do anything about" it. (Dkt. No. 8 ¶ 12.)  This allegation is sufficient to plausibly suggest that Defendants failed to remedy a violation after learning of it through a report or appeal or that they failed to act on information indicating that a violation was occurring.  Therefore, I recommend that the Court deny Defendants' motion to dismiss for lack of personal involvement.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 27) be **GRANTED IN PART AND DENIED IN PART**.  I recommend that the following claims be dismissed with prejudice: (1) all claims against Defendants in their official capacities; (2) all claims against Defendants Van Orgrum and Bonds; (3) the claim that Defendants retaliated against Plaintiff; and (4) any claim that Defendants verbally harassed Plaintiff.  I recommend that the following claims be dismissed without prejudice: (1) the claim that Defendants violated Plaintiff's right of access to the courts; and (2) the claim that Defendants subjected Plaintiff to unconstitutional conditions of confinement by denying him recreation.  I recommend that Defendants Gravlin, Demarse, Lira, Trombly, Otis, and Belleinier be directed to answer Plaintiff's conditions of confinement claim regarding his exposure to feces.

---

[7] The Supreme Court's decision in *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937 (2009) arguably casts in doubt the continued viability of some of the categories set forth in *Colon*. *See Sash v. United States*, ___ F. Supp. 2d ___, No. 08-CV-116580, 2009 U.S. Dist. LEXIS 116580, at *32-39, 2009 WL 4824669, at*10-11 (S.D.N.Y. Dec. 15, 2009).  Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 29, 2010
      Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge